**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
Olivia M. Treister (341191)
*otreister@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
*mike@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
Blake R. Jones (SBN 21221)
*blake@crosnerlegal.com*
Chad Saunders (SBN 257810)
*chad@crosnerlegal.com*
9440 Santa Monica Blvd., Ste. 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATRICE SIDA and KRIS YERBY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE HONEST COMPANY, INC. <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) <br> 2. Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) <br> 3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) <br> 4. Breach of Warranty <br> 5. Unjust Enrichment <br><br> **JURY TRIAL DEMANDED** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF CONTENTS

Page No.

COMPLAINT ....................................................................................................... 1

I.     INTRODUCTION ....................................................................................... 1

II.    JURISDICTION .......................................................................................... 5

III.   VENUE ......................................................................................................... 5

IV.    PARTIES ..................................................................................................... 6

       A.     Plaintiffs ......................................................................................... 6

       B.     Defendant ........................................................................................ 8

V.     FACTUAL ALLEGATIONS ...................................................................... 9

       A.     Market and Regulatory Background ........................................... 9

       B.     Defendant's Brand Strategy and Marketing Campaign ............. 10

       C.     Falsity of the Challenged Representations ................................. 30

       D.     Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Products, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Products ............................................................................... 32

       E.     The Products' Substantial Similarity ......................................... 36

       F.     No Adequate Remedy at Law ...................................................... 37

VI.    CLASS ACTION ALLEGATIONS ......................................................... 38

VII.   CAUSES OF ACTION ............................................................................. 42

       COUNT ONE

       Violation of California Unfair Competition Law

       (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ................................. 42

              "Unfair" Prong ................................................................... 45

              "Fraudulent" Prong ........................................................... 46

              "Unlawful" Prong .............................................................. 47

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

COUNT TWO

Violation of the False Advertising Law

(Cal. Bus. & Prof. Code §§ 17500, *et seq.*) ............................................................. 49

COUNT THREE

Violation of the Consumers Legal Remedies Act ("CLRA")

(California Civil Code §§ 1750, et seq.) .................................................................. 50

COUNT FOUR

Breach of Warranty....................................................................................................... 53

COUNT FIVE

Unjust Enrichment/Restitution................................................................................... 55

PRAYER FOR RELIEF........................................................................................................... 56

DEMAND FOR JURY TRIAL................................................................................................. 58

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**COMPLAINT**

1.      Plaintiffs Catrice Sida and Kris Yerby ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and/or "**Class Members**"), bring this class action against Defendant Honest Company, Inc. ("**Defendant**" and/or "**HCI**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.      INTRODUCTION

2.      **Synopsis.** In an effort to increase profits and to obtain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels certain of its Honest® brand wipe products with the following claims: "**PLANT-BASED WIPES**" and "**plant-based wipes**," deliberately leading reasonable consumers, including Plaintiffs, to incorrectly believe that the Products are composed of only water and plant-ingredients, which are ingredients that come from plants and have not undergone substantial processing that materially alters the ingredient's original plant composition (hereinafter, "**Plant-Based Representations**" and/or "**Challenged Representations**"). Stated differently, the Challenged Representations mislead reasonable consumers into believing that the Products are only composed of water and plants, which, by definition, are neither artificially created, nor synthesized, nor substantially processed. Defendant reinforces the Challenged Representations on the Products' packaging by repeatedly using them on nearly all panels of the Products' packaging, including the top, side, and bottom panels. Defendant also repeats the Challenged Representations on the Products' top, side, or bottom panels immediately underneath an image of a plant (such as a leaf, aloe plant, or almond). Most of the Products have background imagery covering their packaging that is readily or easily identified as images of plants, like flowers, aloe, and almonds. Indeed, Defendant trademarked its company logo—specifically, Defendant's name, "THE HONEST CO.," repeated in between two concentric circles that surround an image of a butterfly whose wings resemble four leaves. This logo, or a version that only includes the encircled leaf-butterfly, appear on every single Product's packaging, on all or nearly all sides of its packaging.  In this way, Defendant further perpetuates the false notion that the Products are plant-based—meaning, the Products' ingredients are solely made from plants

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

with the singular exception of water. Fair and accurate depictions of examples of the Products' front-facing labels or packaging, from each of the two product lines (*Plant-Based Baby Wipes* and *Plant-Based Cleansing Wipes*), are depicted below with the Challenged Representations circled in red.

(1)   Honest® *Plant-Based Baby Wipes* (Classic) (72 Count) (**Exhibit 1-2**):



(*see also* Honest® *Plant-Based Baby Wipes*, **Exhibit 1-1 to 1-6**); and

(2)   Honest® *Plant-Based Cleansing Wipes* (Hydrate + Cleanse) (60 Count) (**Exhibit 1-7**) and (Nourish + Cleanse) (60 Count) (**Exhibit 1-8**):



(*see also* Honest® *Plant-Based Cleansing Wipes*, **Exhibit 1-7 to 1-8**).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

3.     **The Deception of the Challenged Representations.** The Challenged Representations have misled reasonable consumers, including Plaintiffs, into believing the Products are plant-based—meaning the Products only contain ingredients that are water or ingredients that either come from plants or are not subjected to substantial processing that materially alters the ingredients' original plant-based composition. However, contrary to the labeling, the Products contain numerous ingredients that **do not come from plants whatsoever**, including artificial or synthetic ingredients. In addition, the Products contain ingredients that, although they may have been originally derived from raw plant materials, were subjected to substantial processing, such as chemical modification or processing, that materially altered their original plant composition. Put differently, certain ingredients originally derived from plants, like coconut or palm oil, are subjected to substantial processing, like chemical modification, such that the resulting ingredients are vastly and fundamentally different from their original form, composition, and chemical properties, characteristics, or qualities. Through falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant sought to take advantage of consumers' desire, perceived value, and willingness to pay more for plant-based products as consumers view such products to be natural and therefore healthier, safer, and more environmentally conservative than non-natural, non-plant-based products. In this way, Defendant has charged consumers a premium for non-plant-based products falsely advertised and warranted as "plant-based," while cutting costs and reaping the financial benefits of utilizing cheaper- and easier-to-procure ingredients that are not water and either do not come from plants or were artificially created, synthesized, or subjected to substantial processing. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Accordingly, Defendant's Plant-Based Representations are misleading and deceptive, and therefore unlawful.

4.     **Products.**  The Products at issue are Honest® brand wipes sold to consumers in the United States that contain the Challenged Representations on the products' labels and/or packaging, regardless of their size or variations—such as wipe count or type of packaging (collectively referred to herein and throughout this complaint as the "**Products**"), which include, but are not necessarily limited to, the following product lines, products, and sizes or variations:

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a. (1) Honest® *Plant-Based Baby Wipes*, in all variations or packing types, including:

1. Blue Ikat, in all sizes, including (a) 72 Count, (b) 288 Count, (c) 576 Count, and (d) 720 Count (*see* **Exhibit 1-1A to Exhibit 1-1D**);

2. Classic, in all sizes, including (a) 72 Count, (b) 288 Count, (c) 576 Count, and (d) 720 Count (*see* **Exhibit 1-2A to Exhibit 1-2D**);

3. Pattern Play, in all sizes, including (a) 10 Count, (b) 36 Count, (c) 72 Count, (d) 288 Count, (e) 576 Count, and (f) 720 Count (*see* **Exhibit 1-3A to Exhibit 1-3F**);

4. Rose Blossom, in all sizes, including (a) 72 Count, (b) 288 Count, (c) 576 Count, and (d) 720 Count (*see* **Exhibit 1-4A to Exhibit 1-4D**);

5. Rainbow, in all sizes, including (a) 72 Count, (b) 288 Count, (c) 576 Count, and (d) 720 Count (*see* **Exhibit 1-5A to Exhibit 1-5D**); and

6. Terrazzo, in all sizes, including (a) 36 Count (*see* **Exhibit 1-6A**)

(*see* **Exhibit 1-1 to 1-6** [Product Images for Honest® *Plant-Based Baby Wipes*]); and

b. (2) Honest® *Plant-Based Cleansing Wipes*, in all variations or packing types, including:

7. Hydrate + Cleanse, in all sizes, including (a) 60 Count, (b) 240 Count, (c) 480 Count, and (d) 600 Count (*see* **Exhibit 1-7A to Exhibit 1-7D**); and

8. Nourish + Cleanse, in all sizes, including (a) 60 Count, (b) 240 Count, (c) 480 Count, and (d) 600 Count (*see* **Exhibit 1-8A to Exhibit 1-8D**)

(*see* **Exhibit 1-7 to 1-8** [Product Images for Honest® *Plant-Based Hydrate + Cleanse Wipes*]).

5. **Primary Dual Objectives.** Plaintiffs bring this action, individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*), for dual primary objectives: ***One***, Plaintiffs seek, on Plaintiffs' individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiffs and consumers overpaid for Products that should, but fail to, comport with the Challenged Representations (which may include, for example, damages,

restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. *Two*, Plaintiffs seek, on their individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations from the Products' labels and/or packaging, removal or modification of the Challenged Representations from the Products' advertising, modification of the Product's formulation be it a change in ingredients or their sourcing and manufacturing processes, and/or discontinuance of the Product's manufacture, marketing, and/or sale.

## II.   JURISDICTION

6.   This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

7.   Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, one or more of the Plaintiffs purchased one or more Products in this District, and Defendant has deliberately marketed, advertised, and sold the Products within this District using the Challenged Representations.

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

IV.   **PARTIES**

A.   **Plaintiffs**

8.   **Plaintiff Catrice Sida.** The following is alleged based upon Plaintiff Catrice Sida's personal knowledge:

a.   **Residence.** Plaintiff Sida is a resident of San Jose, California.

b.   **Purchase Details.** Plaintiff Sida purchased Honest® *Plant-Based Baby Wipes* (the "**Sida Purchased Product**") at a Target store in or around San Jose, California, in or around 2020 (*see generally* **Exhibit 1-1-Exhibit 1-6** [Product Images]).

c.   **Reliance on Challenged Representations.** In making the purchase, Plaintiff Sida read the Challenged Representations on the Product's labels or packaging, leading Plaintiff to believe that the Product was plant-based—i.e., the Product was composed of water and only ingredients that come from plants, which are neither artificial, synthetic, or highly processed.

d.   **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Sida did not know that the Challenged Representations were false in that Plaintiff did not know that the Product was not actually plant-based—i.e., Plaintiff did not know that the Product was not composed entirely of water and plant ingredients, but instead included ingredients that were not water and either did not come from plants at all or were artificial, synthetic, and/or highly processed.

e.   **No Notice of Contradictions.** Plaintiff Sida did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representations or otherwise suggested that the Products were not, in fact, plant-based and therefore did, in fact, contain ingredients that were not water, not plant, and/or were artificial, synthetic, or highly processed.

f.   **Causation/Damages.** Plaintiff Sida would not have purchased the Product, or would not have paid as much for the Product, had Plaintiff known that it was not plant-based—i.e., that the Product was not composed entirely of water and plant ingredients, but instead contained ingredients that were not water and either did not come from plants or were artificial, synthetic, and/or highly processed.

g.   **Desire to Repurchase.** Plaintiff Sida continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true.

h.   **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Sida does not personally know what ingredients are actually contained in the Products or the methods used to make the Products (including sourcing and manufacturing processes), and Plaintiff does not possess any specialized knowledge or general familiarity with the Products' ingredients or the methods typically used to obtain or make such ingredients (including sourcing and manufacturing processes), such that Plaintiff does not personally know and cannot determine whether the Products' ingredients: (a) come from plants or some other raw materials, (b) are naturally harvested or artificially created or synthesized, or (c) have undergone substantial processing that has materially altered the ingredients' original plant-

6

based composition; and, therefore, Plaintiff has no way of determining whether the Challenged Representations on the Products are true.

i.   **Inability to Rely.** Plaintiff Sida is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels.

9.   **Plaintiff Kris Yerby.** The following is alleged based upon Plaintiff Kris Yerby's personal knowledge:

a.   **Residence.** Plaintiff Yerby is a resident of El Cajon, California.

b.   **Purchase Details.** Plaintiff Yerby purchased Honest® Baby Wipes (Pattern Play) (576 Count) (the "**Yerby Purchased Products**") for approximately $39.00 online from a Target store in El Cajon, California, in or around the spring of 2021 (*see*, **Exhibit 1-3E** [Product Images])

c.   **Reliance on Challenged Representations.** In making the purchase, Plaintiff Yerby read the Challenged Representations on the Product's labels or packaging, leading Plaintiff to believe that the Product was plant-based—i.e., the Product was composed of water and only ingredients that come from plants, which are neither artificial, synthetic, or highly processed.

d.   **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Yerby did not know that the Challenged Representations were false in that Plaintiff did not know that the Product was not actually plant-based—i.e., Plaintiff did not know that the Product was <u>not</u> composed entirely of water and plant ingredients, but instead included ingredients that were not water and either did not come from plants at all or were artificial, synthetic, and/or highly processed.

e.   **No Notice of Contradictions.** Plaintiff Yerby did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representations or otherwise suggested that the Products were not, in fact, plant-based and therefore did, in fact, contain ingredients that were not water, not plant, and/or were artificial, synthetic, or highly processed.

f.   **Causation/Damages.** Plaintiff Yerby would not have purchased the Product, or would not have paid as much for the Product, had Plaintiff known that it was not plant-based—i.e., that the Product was <u>not</u> composed entirely of water and plant ingredients, but instead included ingredients that were not water and either did not come from plants or were artificial, synthetic, and/or highly processed.

g.   **Desire to Repurchase.** Plaintiff Yerby continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true.

h.   **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Yerby does not personally know what ingredients are actually contained in the Products or the methods used to make the Products (including sourcing and manufacturing processes), and Plaintiff does not possess any specialized knowledge or general familiarity with the Products' ingredients or the methods typically used to obtain or make such ingredients (including sourcing and manufacturing processes), such that Plaintiff does not personally know and cannot determine whether the Products' ingredients: (a) come from plants or some other raw materials, (b) are naturally harvested or artificially created or synthesized, or (c) have undergone

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

substantial processing that has materially altered the ingredients' original plant-based composition; and, therefore, Plaintiff has no way of determining whether the Challenged Representations on the Products are true.

i. **Inability to Rely.** Plaintiff Yerby is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels.

10. **Plaintiffs' Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations. Plaintiffs would like to purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiffs are average consumers who are not sophisticated in the chemistry, manufacturing, and formulation of personal care products, such as the Products. Indeed, Plaintiffs do not have any personal knowledge regarding the ingredients or the methods Defendant used to make them (including sourcing and manufacturing processes). Thus, Plaintiffs cannot accurately differentiate between ingredients that come from plants, as opposed to other raw materials, ingredients that are harvested from plants as opposed to artificially created or synthesized, or ingredients that may have come from plants but were subjected to substantial processing that materially altered their original plant composition. Since Plaintiffs want to purchase the Products again to obtain the benefits of the Challenged Representations—despite the fact that the Products were once marred by false advertising or warranties—Plaintiffs would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representations on their labels, packaging, and Defendant's advertisements, including Defendant's websites and social media platforms. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiffs are currently and in the future deprived of the ability to rely on the Challenged Representations in deciding to purchase the Products.

**B.** **Defendant**

11. **Defendant Honest Company, Inc. ("Defendant")** is headquartered and/or maintains a principal place of business in the State of California. Defendant was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. In fact, Defendant designed the Products in the State of California.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*See, e.g.*, **Exhibit 1-2B** [Baby Wipes, Classic, 288 Ct., Back Label]. Defendant is one of the owners, manufacturers, marketers, and/or distributors of the Products, and is one of the companies that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this state and judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

## V. FACTUAL ALLEGATIONS

### A. Market and Regulatory Background

12. **Consumer Demand for Plant-Based Products.** In recent years, consumers have poured billions of dollars into the "plant-based" and "natural" personal care market.[1] Consumers value plant-based products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.[2] In response to consumers' desire for plant-based or natural products, many companies, like Defendant, have scrambled to manufacture, market, and sell purportedly "plant-based" products in an effort to gain market share. Unfortunately, rather than creating the plant-based products consumers desire, Defendant has instead chosen to "greenwash" the Products and market them through deceptive labeling and advertising (to wit, the Challenged Representations) to convince consumers that the Products are plant-based when, in reality, they contain numerous ingredients that are not water or plants.

13. **FTC Guidelines.** In response to frequent and pervasive greenwashing, the United States Federal Trade Commission ("**FTC**") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[3]  As relevant here, the FTC stated:

---

[1] *See generally Plant-Based Personal Care Products*, Eternal Spiral Books (Nov. 24, 2018), https://eternalspiralbooks.com/plant-based-personal-care-products/ (last accessed July 6, 2022).
[2] *Id.*
[3] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such as **"plant-based,"** in the context of their advertisements.

16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (emphasis added). Here, Defendant disregarded FTC guidelines on "Plant-Based" claims, opting to manufacture the Products with ingredients that are neither water nor plant, and at times entirely artificial, synthetic, or substantially processed. Thus, Defendant did not fulfill its responsibility to "substantiat[e] consumers' reasonable understanding of . . . 'plant-based'" advertising claims as reasonable consumers, such as Plaintiffs, reasonably believe that "plant-based" Products only contain water or plant ingredients that have not undergone substantial processing.

**B.      Defendant's Brand Strategy and Marketing Campaign**

14.      **Brand Strategy/Marketing Campaign.** Defendant deliberately created and executed a marketing campaign to distinguish the Honest® brand and The Honest Co. from their competitors, as a brand and company that is transparent, honest, and trusted by consumers, and pursues safer, environmentally conservative, and socially responsible goals. In furtherance of Defendant's marketed identity and mission, Defendant repeatedly characterizes its products as clean, sustainable, and well-designed, emphasizing the Products purported "100% plant-based" attribute. Not only does Defendant label the Products' packaging with the Challenged Representations—"PLANT-BASED WIPES" and/or "plant-based wipes"—but Defendant has also heavily advertised its Products as being "plant-based" for the past ten years. As described below, Defendant maintains an Honest® website, and several Honest® social media accounts—all designed to promote the brand and the company's identity and goals, as well as market the Products, in line with this corporate and brand strategy, as "plant-based" to convince consumers that Defendant's Honest® brand Products, at issue here, are exclusively made from water and plants that are not artificial, synthetic, or substantially processed, and therefore are safer and environmentally or socially responsible.

/ / /

/ / /

15. **Challenged Representations on Products' Labels.** Defendant falsely and misleadingly labels the Products with the Challenged Representations: "PLANT-BASED WIPES" and "plant-based wipes" as depicted below.

**PLANT-BASED WIPES**

**plant-based wipes**

The Challenged Representations on the Products' packaging are conspicuous and designed to grab the consumer's attention.

a. **Product Name.** The Challenged Representations are incorporated into the Product's name and identification as a "wipe" ("Plant-Based Wipes"), such that consumers will identify the Product according to this descriptive feature and otherwise uses the Challenged Representations as part of its name. *See* **Exhibit 1** [Product Images].

b. **Placement.** The Challenged Representations are prominently placed on the center of each Products' primary display panel of the front label or packaging, immediately underneath the Products' brand name ("HONEST"), and wherever applicable the Product's distinguishing variation ("Hydrate + Cleanse" or "Nourish + Cleanse"). *See* **Exhibit 1** [Product Images].

c. **Repetition.** The Challenged Representations are repeatedly used on nearly all sides or panels of the Product's packaging, including the front, top, side, and back panels. *See* **Exhibit 1** [Product Images].

d. **Sparsity.** The Challenged Representations are not hidden in a sea of information; rather, the front, side, and top display panels contain scant information about the Products, largely limited to the brand name (Honest), identity of the product line (e.g., Nourish and Cleanse), number of wipes (e.g., 60 wipes), and a few claims about the Products' attributes (e.g., Gentle + Durable and Made Without: Alcohol, Parabens, Synthetic Fragrance, and Chlorine Processing). *See* **Exhibit 1** [Product Images].

e. **Typeface.** The Challenged Representations stand out from the scant information contained on the front panel, prominently displayed with a bold and large typeface, clear and legible font, and highly visible black letters that starkly contrast with the Products' background. *See* **Exhibit 1** [Product Images].

f. **Imagery.** Defendant uses imagery to reinforce the Challenged Representations. The Challenged Representations are repeated on the Products' top, side, or bottom

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

panels of their packaging, immediately underneath or alongside an image of a plant, such as a leaf, aloe plant, or almond (as depicted below). *See* **Exhibit 1** [Product Images]. Additionally, many of the Products have background imagery covering their packaging that is readily or easily identified by consumers as images of plants, like flowers, aloe, and almonds. *See* **Exhibit 1-2** [Baby Wipes, Classic] (flowers); **Exhibit 1-4** [Baby Wipes, Rose Blossom] (flowers); **Exhibit 1-7** [Cleansing Wipes, Hydrate] (aloe vera plants); **Exhibit 1-8** [Cleansing Wipes, Nourish] (almonds).



g.  **Trademarked Logo.** Indeed, Defendant trademarked its company logo depicted below—specifically, Defendant's name, "THE HONEST CO.," repeated in between two concentric circles that surround an image of a butterfly whose wings resemble four leaves. This logo or a version that only includes the encircled leaf-butterfly (depicted below) appear on every single Product's packaging, on all or nearly all sides of its packaging.

   

In this way, Defendant uses the Products' name and the carefully designed labels and packaging, including the Challenged Representations' placement, repetition, and typeface, alongside the sparsity of competing information and abundance of reinforcing imagery and trademarked logos, to perpetuate the false notion that the Products are truly "plant-based." The net-effect or net-impression on consumers viewing the Products' labels or packaging is that the Products contain only water and ingredients that come from plants, which have not undergone such substantial processing that it materially alters the ingredients' original plant composition.

16.    **Honest Website.** Defendant emphasizes the Products' purported plant-based attribute in its advertising of the Products, the Honest® brand, and The Honest Co., as part of its marketing

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

campaign and brand strategy to identify Honest® Plant-Based Baby and Cleansing Wipes as "plant-based." Not only has Defendant named and labeled or packaged the Products with the Challenged Representations, but Defendant engaged in a marketing campaign initiated long before and continuing throughout the Class Period that focuses on selling safe and environmentally or socially responsible products, in particular natural or plant-based products. Defendant's marketing campaign and brand strategy are evidenced by its www.honest.com website. For example:

a. **Home.** On the homepage of its official website, Defendant showcases numerous products with plants and plant-imagery, describing its products as safe for consumers and the planet, and touting: "We care about people and the planet. We make clean, sustainable, well-designed products that work." **Exhibit 2-a** [Homepage].

b. **Honest Standard.** On the Honest Standard webpage, Defendant describes the importance of transparency with consumers through marketing that accurately reflects the product's attributes. **Exhibit 2-b** [The Honest Standard] ("We believe you have a right to know what's in your products and why, regardless of what regulations require. We're committed to providing access to information and education that allows you to make the best choices for you and your family."). Defendant also describes its philosophy of incorporating natural materials, like plants, to make safer and more environmentally responsible products, frequently displayed alongside plant-imagery. *Id.* ("That's why we err on the side of caution when it comes to ingredient selection. . . . we do our best to be thoughtful and diligent in avoiding chemicals of concern, because we think you would do the same. . . . And for us, this means ever exploring and evolving to improve our use of renewable resources—from plant-derived ingredients . . . to the amount of recycled and/or recyclable material in our packaging.").

c. **Honest Purpose.** Likewise, on the Honest Purpose webpage, Defendant tethers its brand, company, and array of products as the safer and more responsible consumers' choice, explaining: "We've always believed small choices add up to a big difference. Call it the Butterfly Effect. By Supporting Honest, you're showing support for organizations that share our values and amplify our impact, making happy, healthy lives possible for more people everywhere." **Exhibit 2-c** [The Honest Purpose].

d. **Sustainability.** Further, on the Sustainability webpage, Defendant touts that the Honest brand cultivates a "clean conscious culture," and that Defendant puts people and the planet first by keeping it "real green." **Exhibit 2-d** [Sustainability].

e. **Natural Baby Products.** On the Natural Baby Products webpage, Defendant further emphasizes how important safe baby products are and that consumers should trust the ingredients used in those products. **Exhibit 2-e** [Natural Baby Products] (claiming "Safe baby products that work, powered by ingredients you trust."). Defendant highlights that "Natural Babies are Happy Babies" and that Defendant "strive[s] to bring [consumers] naturally-derived, clean baby supplies at affordable pricing, with plenty of options to choose from." *Id.* Defendant claims that its "natural baby products are made with simple, clean ingredients that [consumers] can trust to be safe when coming in contact with [] precious new bab[ies]." *Id.*

f. **Wipes.** On Defendant's Wipes webpage, which displays all Honest® brand wipe-products, Defendant once again claims that the Products are formulated with only natural and plant-based ingredients that are safer and better for the environment, boasting: "As every seasoned mama knows, water wipes for baby babies are useful for just about everything, not just dirty bottoms. They can handle almost any spill or mess. . . . Whatever you use them for, *you should be able to trust that the diaper wipes you use are safe and non-toxic*. Honest Co to the rescue! *We happen to specialize in the safe and non-toxic baby wipe*. . . . Make the switch to Honest Baby Wipes where delicate skin is top of mind and *nasty chemicals* and parabens *are nowhere to be found in our formulas*. . . . Whether you prefer baby dry wipes or water wipes, rose blossom scent, or fragrance-free, *you can rest assured that we use only natural, plant-based materials, and ingredients*. . . . It's our Honest commitment to you and your little one—*safe, non-toxic products you can rely on*." **Exhibit 2-f** [Wipes] (emphasis added).

g. **Newborn Essentials.** On the Newborn Essentials webpage, Defendant proudly brags that the Products are 100% plant-based. **Exhibit 2-g** [Newborn Essentials].

h. **Honest Plant-Based Baby Wipes.** At the top of the Honest Plant-Based Baby Wipes product line webpage, Defendant proclaims: "Clean up all of life's messes with our *100% plant-based baby wipes*, made with over 99% water and gentle on sensitive skin." **Exhibit 2-h** [Honest Plant-Based Baby Wipes] (emphasis added). In the details-section, Defendant reiterates that the wipes "contain more than 99% water and *zero harsh chemicals*," explaining that "Honest wet wipes are thoughtfully designed and *contain everything you need and nothing you don't*," and noting "*you can trust that this product is safe*. . ." *Id.* (emphasis added).

i. **Honest Plant-Based Cleansing Wipes.** Likewise, on the Honest Plant-Based Cleansing Wipes product line webpage, Defendant provides scan details for the products and instead describes them by emphasizing their natural and plant-based feature: "Infused with . . . natural fragrance, our new 100% plant based wipes clean effectively . . ." **Exhibit 2-i** [Honest Plant-Based Cleansing Wipes].

j. **Blog Posts.** Further, Defendant publishes various blog posts highlighting the importance of the use of plant or natural ingredients in its products, specifically Products at issue. **Exhibit 2-j** [New Year, New Babes, New Priorities] ("From clean-conscious diapers that comfortably keep your lil' babe dry + secure to baby wipes made with *plant-based ingredients* that are gentle on them—we've put together our lineup of *safe*, thoughtfully designed baby products you'll want to have at the top of your 2022 parenting agenda. . . . When it comes to our lil' babes . . ., we want the best—from *clean, safe ingredients* to reliable products that work—and, of course, at the right price. . . . Ultra-durable and strong against messy situations yet super gentle on baby's sensitive skin, our *100% plant-based cloth wipes* are made from over 99% water and zero harsh ingredients like parabens. *Containing everything you need and nothing you don't* . . .") (emphasis added). Defendant recognizes the certain chemicals are hazardous to health, particularly unborn babies and children. **Exhibit 2-k** [Fewer Toxins, Healthier Babies] ("Diverse experts agree that before and after birth, exposures to toxic chemicals and pollutants significantly increase your baby's risk for neurodevelopmental disorders. These include chemicals in commonly used household products . . . . our own choices can create a healthier environment . . .").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

17.    **Annual Report.** Defendant summarizes its long-standing and successful brand strategy in its Form 10-K, 2021 Annual Report, executed March 28, 2022, addressed to Defendant's stockholders, and publicly available on its official website. **Exhibit 4** [2021 Annual Report], available at https://investors.honest.com/financial-information/annual-reports (last accessed August 5, 2022). In its report, Defendant explains how it has successfully focused on taking advantage of the consumer trend for natural products because consumers want safer and environmentally or socially responsible products. For example:

a.   **Founder Message to Stockholders.** In a message from Defendant's celebrity founder Jessica Alba, entitled "Dear Fellow Stockholders," she describes how she started the company that is based on consumer values and the importance they place on safer and environmentally responsible products: "I founded Honest on the belief that people shouldn't have to choose between what works and what's good for them . . . . In just a decade, we've taken an idea and built a modern brand that consumers love and trust . . . . The inception of Honest stemmed from a massive whitespace I identified as a consumer—the need for a company grounded in purpose that created innovative products designed to be in, on and around my home and family. . . . [M]ost people, if given the option, would choose to live The Honest Life. [The company's] strategy has always been anchored around the consumer, aligning with everyone's desire to live a happy and healthy life. [The company's] purpose to do good for people and the planet by creating clean products . . . has inspired [its] passionate culture of innovation." **Exhibit 4** [2021 Annual Report] at Founder Message.

b.   **Chairman and Chief Executive Officer Message to Shareholders.** In a message from Defendant's Chairman of the Board of Directors and Chief Executive Officer, also entitled "Dear Fellow Stockholders," they describe Defendant's "2022 Strategic Focuses": "Honest is focused on executing our consumer-centric marketing, product innovation, and distribution expansion strategy by leveraging the strengths we believe will set us up for long-term success," which include, "[a] large addressable clean and natural market that is outpacing the conventional market." **Exhibit 4** [2021 Annual Report] at Chairman and CEO Message.

c.   **Business Overview.** Defendant provides an overview of its brand image, company values, and business strategy: "The Honest Company . . . is a mission-driven lifestyle brand that formulates, designs and sells clean products with a focus on sustainability and thoughtful design. Our commitment to our core values, continual innovation and engaging our community has differentiated and elevated our brand and our products. Since our launch in 2012, we have been dedicated to developing clean, sustainable, effective and thoughtfully designed products. By doing so with transparency, we have cultivated deep trust around what matters most to our consumers: their health, their families and their homes." **Exhibit 4** [2021 Annual Report] at p. 10.

d.   **Supply Chain and Operations.** Defendant also describes the manufacture of its products: "The primary raw materials and components of our products include sustainably harvested fluff pulp, plant-based substrate in our baby wipes, and other biobased materials. Just as important as what goes into our products, we actively work with suppliers to avoid certain materials, including elemental chlorine-free

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

pulp, parabens, paraffins, synthetic fragrances, and mineral oil, that don't meet our standards but are commonly used by mainstream players." **Exhibit 4** [2021 Annual Report] at p. 7.

e. **Competition.** Defendant describes the highly competitive market for its products, including wipes: "The markets in which we operate are highly competitive and rapidly evolving, with many new brands and product offerings emerging in the marketplace. . . . We compete based on various product attributes including clean formulation, sustainability, effectiveness and design, as well as our ability to establish direct relationships with our consumers through digital channels." **Exhibit 4** [2021 Annual Report] at p. 7.

f. **Our Industry.** Defendant admits that it deliberately and intentionally markets its company, brand, and products, including the Products, as "clean and natural," because consumers want to buy natural products that are safer and better for the environment:

> We believe that the "clean and natural" product categories of the Diapers and Wipes, Skin and Personal Care and Household and Wellness markets are growing at outsized rates, as a result of the increasing shift in consumer demand for "better-for-you" products. Based on independent third-party consumption data for the 52 weeks ended December 26, 2021, the clean and natural products of Honest diaper, wipes and baby personal cares grew 11.7%, 7.3% and 10.1%, respectively, significantly outpacing the products in the industry as a whole which grew in diapers and baby personal care 8.8% and 5.2%, respectively, and wipes as a whole declined 0.1%.

> We believe that certain historical leading brands that have produced products in these categories for decades generally focus on single categories and offer products made with conventional ingredients that are less aligned with increasing consumer preference for clean and natural solutions. We believe that given consumers' growing focus on their health and wellness, reducing waste and promoting social impact, we are well-positioned to continue to take market share from these legacy brands.

> We believe that this market shift towards clean and natural products is in its early stages and provides whitespace opportunity for further market penetration and category growth in the clean and natural product categories.

**Exhibit 4** [2021 Annual Report] at p. 8; *see also id.* at Board Chair & CEO "Dear Fellow Stockholders" (noting that, in 2021, Defendant's revenues grew by 6% in its "core" product category of "Diaper & Wipes," and its wipes retail consumption grew by 7.3% year-over-year, compared to industry growth of negative 0.1% in the same category, and notwithstanding the COVID-19 pandemic and supply chain challenges that it and the industry faced alike).

g. **Our Purpose-Driven Organization.** Defendant reiterates its "purpose-driven mission" and commitment to the planet, including: "sustainable packaging"; "lessen [its] environmental footprint"; and "prioritize waste reduction". **Exhibit 4** [2021 Annual Report] at p. 8. As part of its mission, Defendant proclaims it is "*committed to the health safety and well-being of its consumers by providing clean, effective, well-designed products consumers can feel great about using,*"

noting its "emphasis on ingredient and formula assessments . . . where [it] review[s] the final formula for potential chemical hazards . . ." *Id.* Defendant further boasts: "*We prioritize naturally-driven resources over synthetic, petro-chemicals in our product formulas an designs*," noting the compliance of most baby products with standards set by the United States Department of Agriculture's BioPreferred Program for Biobased Certified products; as well as the "100% plant-derived" alcohol used in its alcohol wipes and hand sanitizers; the "100% natural" fragrances used in its products; and "plant-derived materials" and "plant-based backsheet" used for the primary components of its diapers. *Id.*

18.     **Social Media Representations.** Defendant continuously uses deceptive labeling and marketing techniques to falsely portray its Products as plant-based, and its brand as natural and clean, taking advantage of social media platforms like Twitter, Instagram, Facebook, and Pinterest. For example:

a.     **Twitter Screenshots.** Defendant's official Twitter account for Honest® has marketed and advertised Defendant's Products as plant-based over the course of the last ten years. Notably, Defendant often advertises the Products as "100% plant-based" and its commitment to using plant-based ingredients that are "clean" and safe for people and the environment. Examples of such marketing efforts are depicted on the following pages.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265



**HONEST** ✔ @Honest · May 15, 2021          ・・・

New 100% **plant-based** wipes you can trust in all sorts of sticky situations! 🦋

We infused skin-nourishing ingredients + fresh natural scents to give your skin a little love while you handle life's messes. 🥒🌸💧



0:03  277 views

💬          🔁 2          ♡ 10          

**Website: @Honest Twitter**
**URL: https://twitter.com/Honest/status/1393621477556170755**
**Date Captured: 6/14/2022**

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Website: @Honest Twitter**
**URL: https://twitter.com/Honest/status/1480728745291878400**
**Date Captured: 7/7/2022**

CLASS ACTION COMPLAINT



**Website: @Honest Twitter**
**URL: https://twitter.com/Honest/status/1470532899355049985**
**Date Captured: 7/7/2022**

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b.    **Instagram Screenshot.** Defendant's Instagram account for Honest® also markets and advertises Defendant's Products as "100% Plant-Based," as depicted below:



**Website: @Honest Instagram**
**URL: https://www.instagram.com/p/CHgkRwyjSfc/**
**Date Captured: 6/14/2022**

c.    **Instagram Stories.** Further, on Defendant's Instagram account, Defendant has an entire story, on its banner, named: "Plant-Powered," regarding Defendant's plant-based products and Defendant's plant-based campaign, as depicted below, which includes several ads emphasizing those products are "clean," can be trusted, are safe for people, and good for the environment:



**Website: @Honest Instagram**
**URL: https://www.instagram.com/stories/highlights/17867524997644641/Date**
**Captured: 7/7/2022**

CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



<span style="color:red">**Website: @Honest Instagram**
**URL:**
**https://www.instagram.com/stories/highlights/17867524997644641/**
**Date Captured: 7/7/2022**</span>

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Website: @Honest Instagram**
**URL:**
**https://www.instagram.com/stories/highlights/17867524997644641/**
**Date Captured: 7/7/2022**

CLASS ACTION COMPLAINT



**Website: @Honest Instagram**
**URL:**
**https://www.instagram.com/stories/highlights/17867524997644641/**
**Date Captured: 7/7/2022**

d.      **Pinterest Screenshots.** Likewise, Defendant's Pinterest account for Honest®
also markets and advertises Defendant's Products as "100% Plant-Based." At
the top of Defendant's Pinterest account, Defendant touts, "Welcome to
Honest Life. All the (clean) things you need for a baby, beauty, and home."
Examples of such marketing efforts are depicted below:





**Website: @Honest Pinterest**
**URL: https://www.pinterest.com/HonestCompany/**
**Date Captured: 7/7/2022**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





From **honest.com**

## 100% Plant-Based Baby Wipes

Honest® hypoallergenic, 100% plant-based baby wipes are made with over 99% water + zero harsh chemicals making them perfect for sensitive skin.

**Honest** ✔
111k followers

Organic Baby Wipes    Honest Baby Products    Busy Life    Matte Lips

More information...

**Website: @Honest Pinterest URL: https://www.pinterest.com/pin/curly-hair--287948969914659495/ Date Captured: 6/14/2022**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

e.    **Facebook Screenshot.** Defendant's Facebook account for Honest® also markets and advertises Defendant's Products as "100% Plant-Based." Further, on Defendant's "About" page, Defendant states its mission "is to empower people to live healthy, happy lives," emphasizing that Defendant is "committed to creating effective, safe, delightful, accessible, responsible products." Examples of such advertising are depicted below.



<span style="color:red">Website: @The Honest Company Facebook
URL: https://www.facebook.com/Honest
Date Captured: 7/7/2022</span>

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**The Honest Company** ✔
May 13, 2021 · ⊙

Calling all Honest wipes stans, we have wipes infused with skin nourishing ingredients + natural scent! Nourish + Cleanse and Hydrate + Cleanse are two NEW 100% plant-based wipe options that help you clean up all the messes while giving skin a little extra love (plus, they smell amazing!)

Use them for the whole fam — from gently cleansing your hands on-the-go or freshening up post-workout, to cleaning kiddos' messy faces and hands! Keep them in the car for sticky snacks on-the-go, in your workout bag for a quick refresh, and in all the rooms of your home for easy access to these multitasking wipes we love!

🌸 Nourish + Cleanse 🌸
Benefits: Made with jojoba oil + almond oil to nourish skin
Key ingredients: Jojoba and almond oil, naturally scented with Sweet Almond

🥒 Hydrate + Cleanse 🥒
Made with aloe + cucumber to hydrate skin
Key ingredients: Aloe and cucumber, naturally scented with Aloe Water

Which scent are you trying first?




**Website: @The Honest Company Facebook**
**URL: https://www.facebook.com/Honest**
**Date Captured: 6/14/2022**

29

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### C.    Falsity of the Challenged Representations

19.    **Falsity of the Challenged Representations.** Although each of the Products at issue is marketed with the Challenged Representations, the Products are chock full of ingredients that are not water, do not come from any plants, and, in many instances, are artificially created, synthesized, or highly processed. *See* **Exhibit 3** [Ingredient Disclosures]. Specifically:

a.  Honest® Plant-Based ***Baby Wipes***, in all packaging types or variations (e.g., Classic, Pattern Play, Blue Ikat, Rainbow, Rose Blossom, and Terrazzo) and in all sizes, contains the following ingredients that are not water or plants:

(1)    Caprylyl Glycol: Is a skin and hair conditioning agent and is usually synthetically produced.

(2)    Citric Acid:  Is commercially produced using a multi-step chemical reaction and a mycological fermentation process involving the bacteria *Aspergillus niger* and glucose. Over 99% of the world's citric acid output is produced by this microbial fermentation process.

(3)    Decyl Glucoside: Is synthetically created through the chemical reaction of glucose with fatty alcohol decanol.

(4)    Ethylhexylglycerin: Is a synthetic compound created by a condensation reaction of two different chemicals (such as alkyl glyceryl ethers) or by the reduction of triglycerides. It is an eye irritant that may cause dermatitis when used on people with sensitive skin.

(5)    Glycerin: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(6)    Sodium Benzoate ("SB"): Is a chemical and synthetic preservative that does not occur naturally and is used to prevent bacteria contamination.  SB is the chemical benzoate of soda ($C_7H_5NaO_2$), produced by the neutralization of benzoic acid with sodium bicarbonate, sodium carbonate, or sodium hydroxide.

(7)    Trisodium Ethylenediamine Disuccinate: Is a synthetically produced chelating agent which is extracted from the amino acid L-aspartic acid.

b.  Honest® Plant-Based ***Cleansing Wipes***, **Hydrate + Cleanse**, in all sizes, contains the following ingredients that are not water or plants:

(1)    Caprylyl Glycol: *See supra* ¶ 19a.

(2)    Citric Acid: *See supra* ¶ 19a.

(3)    Ethylhexylglycerin: *See supra* ¶ 19a.

(4)  Glycerin: *See supra* ¶ 19a.

(5)  Limonene: Is synthetically created from geranyl pyrophosphate, via cyclization of a neryl.

(6)  Sodium Benzonate: *See supra* ¶ 19a.

(7)  Sodium Chloride: Is a synthetic substance and is formed when sodium atoms interact with chlorine atoms.

(8)  Sorbitan Oleate Decylglucoside Crosspolymer: Is a synthetic or animal-derived ingredient used as an emulsifier and cleansing agent in cosmetics.

(9)  Trisodium Ethylenediamine Disuccinate: *See supra* ¶ 19a.

c.  Honest® Plant-Based *Cleansing Wipes*, Nourish + Cleanse, in all sizes, contains the following ingredients that are not water or plants:

(1)  Anisaldehyde: Is a fragrance used in cosmetics and labeled as a synthetic flavoring additive by the Food and Drug Administration FDA.

(2)  Benzaldehyde: Is a synthetic flavoring substance and is used chiefly in the manufacture of dyes, cinnamic acid, and other organic compounds, and to some extent in perfumes and flavoring agents. Benzaldehyde is readily oxidized to benzoic acid and is converted to additional products by hydrocyanic acid or sodium bisulfite. It undergoes simultaneous oxidation and reduction with alcoholic potassium hydroxide (a Cannizzaro reaction), giving potassium benzoate and benzyl alcohol; with alcoholic potassium cyanide, it is converted to benzoin; with anhydrous sodium acetate and acetic anhydride, it gives cinnamic acid.

(3)  Beta-Pinene: Is a bicyclic monoterpene chemical compound that is synthetically produced by pinene and a bacterium.

(4)  Caprylyl Glycol: *See supra* ¶ 19a.

(5)  Citric Acid:  *See supra* ¶ 19a.

(6)  Ethylhexylglycerin: *See supra* ¶ 19a.

(7)  Gamma-Decalactone: Is created through the process of oxidative degradation of fatty acids occurring in yeast peroxisomes, the current production of gamma-decalactone is based on chemical and biotechnological methos

(8)  Hydrolyzed Jojoba Esters: Are synthetically formed through the hydrolysis and saponification of jojoba oils, which break down the oils' bond between the fatty acids and alcohols and results in two or more new substances.

(9)  Limonene: *See supra* ¶ 19a.

(10)  Sodium Benzoate: *See supra* ¶ 19a.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(11)   <u>Sodium Chloride</u>: *See supra* ¶ 19a.

(12)   <u>Sorbitan Oleate Decylglucoside Crosspolymer</u>:  *See supra* ¶ 19a.

(13)   <u>Trisodium Ethylenediamine Disuccinate</u>: *See supra* ¶ 19a.

**D.**   **Plaintiffs and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Products, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Products**

20.   **Products.** Defendant manufactures, markets, promotes, advertises, labels, packages, and sells the Products—specifically, Honest® brand Plant-Based Wipes, including Baby Wipes and Cleansing Wipes, that contain the Challenged Representations on their packaging and labels.

21.   **The Challenged Representations.** On the Products' labeling and packaging, Defendant prominently, conspicuously, and repeatedly displays the Challenged Representations—specifically, "PLANT-BASED WIPES" (*see* **Exhibit 1-1 to 1-6** [Baby Wipes Collection]) and "plant-based wipes" (*see* **Exhibit 1-7 to 1-8** [Cleansing Wipes Collection]).

22.   **Reasonable Consumer's Perception.** The Challenged Representations, in isolation or combined with Defendant's pervasive marketing campaign and brand strategy, lead reasonable consumers, like Plaintiffs, into believing that the Products conform to the Challenged Representations. More specifically, reasonable consumers interpret the Challenged Representations to mean that the Products are "plant-based"—meaning, they only contain water and ingredients that come from plants, which are not artificially created, synthesized, or subjected to substantial processing that materially alters the ingredients' original plant-based composition.

23.   **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiffs, in deciding to buy the Products—meaning that the Products' "Plant-Based" attribute is important to consumers and motivates them to buy the Products.

24.   **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representations in deciding to purchase the Products.

25.   **Falsity.** The Challenged Representations are false and deceptive because the Products are not entirely plant-based—meaning that the Products are not exclusively comprised of water and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

plant ingredients. Instead, they contain ingredients that are not water, do not come from plants, and instead are often artificially created, synthesized, and substantially processed.

26. **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiffs, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiffs, do not work for Defendant and therefore have no personal knowledge of the actual ingredients used to formulate the Products, including the methods used to source and manufacture those ingredients. Additionally, most consumers do not have the specialized knowledge of a chemist or product-developer, or an encyclopedic knowledge base of every chemical or ingredient name and the standard methods used to source and manufacture them. Thus, reasonable consumers, like Plaintiffs, cannot discern from the Products' ingredient disclosures whether non-water ingredients come from plants or, instead, were artificially created, synthesized, or substantially processed so as to materially alter any original plant composition. Furthermore, reasonable consumers, like Plaintiffs, do not ordinarily review information on the back or side panels of a consumer products' packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at a consumer product's side or back labels before they buy it.[4]

---

[4] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection

27. **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiffs and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside its massive marketing campaign and brand strategy, to cause Plaintiffs and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

    a.    **Knowledge of Falsity.** Defendant named and marketed the Products with the Challenged Representations, but Defendant opted to formulate and manufacture them in a manner that does not conform to those representations. Specifically, Defendant named and advertised the Products as "Plant-Based" wipes. Instead of using only ingredients that are water or plants, Defendant chose to manufacture the Products with numerous ingredients that are artificial, synthetic, or subjected to substantial processing that materially alters any original plant composition.

    b.    **Knowledge of Reasonable Consumers' Perception.** Defendant knew, or should have known, that the Challenged Representations would lead reasonable consumers into believing that the Products were entirely plant-based—meaning that the ingredients are exclusively water or plants; not artificial, synthetic, or substantially processed so as to materially alter any original plant composition. Not only has Defendant labeled and packaged each of the Products with the Challenged Representations and utilized a long-standing brand strategy to identify the Products as 100% plant-based, natural, safer and more environmentally or socially responsible than non-plant-based or non-natural ingredients (described *supra*), but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were entirely plant-based and devoid of any artificial, synthetic, and substantially processed ingredients. Thus, Defendant either knew the Challenged Representations are misleading before it marketed the Products to

---

methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed Jul. 20, 2022) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the Class, including Plaintiffs, or Defendant would have known that it is deceptive had it complied with its statutory obligations.

c.  **Knowledge of Materiality.** Defendant knew or should have known that the Challenged Representations are material to consumers. ***First***, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels of packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels and packaging demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representations on the Products, advertisements, and throughout Defendant's marketing campaign, evidence Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales. ***Third***, Defendant unabashedly has affirmed, under oath, and in messages addressed to its stockholders, that it believes consumers are motivated to buy plant-based and natural products because they are seen as safer and more environmentally and socially responsible than non-plant-based and non-natural products. And, that Defendant's marketing of its products as such, including the Products, has resulted in substantial increases in revenues and gains in market share for the wipes industry. *See* **Exhibit 4** [2021 Annual Report].

d.  **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, packaging, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations falsity, and Defendant's knowledge that consumers reasonably rely on the Plant-Based Representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations misleads reasonable consumers, such as Plaintiffs, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

28.  **Detriment.**  Plaintiffs and similarly situated consumers would not have purchased the Products, or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

E.      **The Products' Substantial Similarity**

29.     As described herein, Plaintiffs purchased the Sida and Yerby Purchased Products (collectively, the "**Purchased Products**"). The additional Products (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Products.

a.  **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.  **Brand.** All Products are sold under the same brand name: Honest®.

c.  **Purpose.** All Products are wet wipes, primarily intended to be used to wipe substances away from human body surfaces, and secondarily intended to wipe substances away from non-human surfaces. *See* **Exhibit 2-f** [Wipes]

d.  **Key Ingredients.** All Products are made from largely the same ingredients and contain an overlapping combination of non-plant-based ingredients. The Purchased Products contain non-natural ingredients that are found in each of the Unpurchased Products.

e.  **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

f.  **Challenged Misrepresentations.** All Products contain the same Challenged Representations, "**PLANT-BASED WIPES**" and "**plant-based wipes**," conspicuously and prominently placed on the primary display panel of the front label and/or packaging, and repeated on several side, top, and/or bottom panels. **Exhibit 1** [Product Images]. Defendant reinforces the Challenged Representations on the Products by displaying images of plants, including flowers, aloe vera plants, almonds, and leaves, and its company logo that resembles a butterfly whose wings are made of four leaves. *Id.* Defendant buttresses the Challenged Representations through a pervasive and consistent brand strategy effectuated through its long-standing marketing campaign to identify the Honest® brand, The Honest Co., and the Products as natural plant-based products that are clean, safer, and more environmentally friendly and socially responsible than non-natural non-plant-based products. *See* **Exhibit 2** [Digital Marketing].

g.  **Packaging.** All Products are packaged in similar packaging—using a largely mono-color background, and similar styles for written content. **Exhibit 1** [Product Images]. The Products' front packaging largely share, in common, the same marketing claims, including brand identity (Honest), identity of the product line (e.g., Nourish and Cleanse), number of wipes (e.g., 60 wipes), and a few product features (e.g., Gentle + Durable).

h.  **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products—consumers over-pay a premium for plant-based Products, but receive Products that contain ingredients that are neither water nor plants, and instead are artificially created, synthesized, or substantially processed.

/ / /

/ / /

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### F.    No Adequate Remedy at Law

30.    **No Adequate Remedy at Law.** Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

   a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

   b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue).  Thus, Plaintiffs and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

   c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts.  Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations is not true and providing accurate

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs' investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiffs and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserves their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

31.    **Class Definition.** Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of the Classes defined as follow:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations on the Products' labels or packaging, for purposes other than resale ("**Nationwide Class**"); and

All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representations on the Products' labels or packaging, for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, the "**Class**").

32.    **Class Definition Exclusions.**  Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

33.    **Reservation of Rights to Amend the Class Definition.**  Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

34.    **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

35.    **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.    Whether Defendant's conduct of advertising and selling the Products as plant-based when they contain synthetic ingredients constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c.    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d.    Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e.    Whether Defendant advertised the Products with intent not to sell them as

39

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

advertised in violation of Civil Code section 1750, *et seq*.;

f.    Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g.    Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.    Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k.    Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l.    How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.   Whether Defendant's conduct constitutes breach of warranty;

n.    Whether Plaintiffs and the Class are entitled to injunctive relief; and

o.    Whether Defendant was unjustly enriched by their unlawful conduct.

36.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

37.    **Adequacy:** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

38.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

   b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

   c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

   d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

   e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

39.   **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

40.   **Injunctive/Equitable Relief.**   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

41.   **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

/ / /

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# VII.   CAUSES OF ACTION

## COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**(*On Behalf of the California Subclass*)**

42.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

43.   **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs and a California Subclass who purchased the Products within the applicable statute of limitations.

44.   **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

45.   **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Plant-Based Representations—despite the fact the Products contain numerous ingredients that are not water and do not come from plants, as well as ingredients that, through chemical processing and modification, have been materially altered from their original plant-based composition.   Such claims and omissions appear on the labeling and packaging of the Products, which are sold at retail stores, point-of-purchase displays, and online.

46.   **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products contain artificial, synthetic, and highly processed ingredients. Defendant knew and knows that the Products contain ingredients other than water and plant-based ingredients, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products contain only water and ingredients that are plant-based.

47.    **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products only contain water and ingredients that come from plants, and that were not subjected to chemical modification or processing, which materially altered the ingredients' original plant-based composition.

48.    **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations—namely Plaintiffs and the California Subclass lost the purchase price for the Products they bought from the Defendant.

49.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

50.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

51.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or is otherwise ordered to do so.

52.    **Injunction.** Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining

1   Defendant from continuing to engage, use, or employ its practices of labeling and advertising the

2   sale and use of the Products. Likewise, Plaintiffs and the members of the California Subclass seek

3   an order requiring Defendant to disclose such misrepresentations, and to preclude

4   Defendant's failure to disclose the existence and significance of said misrepresentations.

5        53.   **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in

6   violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount

7   of the purchase price they paid for the Products. Further, Plaintiffs and members of the California

8   Subclass have suffered and continue to suffer economic losses and other damages including, but not

9   limited to, the amounts paid for the Products, and any interest that would have accrued on those

10   monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for

11   violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate

12   Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin

13   Defendant's misconduct to prevent ongoing and future harm that will result.

14        54.   **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action

15   for violation of the UCL on behalf of Plaintiffs and the California Subclass. Defendant's unfair,

16   fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or

17   fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's

18   misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay

19   for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded

20   the rights of Plaintiffs and consumers as Defendant was, at all times, aware of the probable

21   dangerous consequences of their conduct and deliberately failed to avoid misleading consumers,

22   including Plaintiffs.  Defendant's misconduct is oppressive as, at all relevant times, said conduct

23   was so vile, base, and/or contemptible that reasonable people would look down upon it and/or

24   otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiffs and

25   consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's

26   misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts

27   with the intent to deceive Plaintiffs and consumers.  The wrongful conduct constituting malice,

28   oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

44

directors, and/or managing agents of the Defendant.

### *"Unfair" Prong*

55. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal.App.4th 1394, 1403 (2006).

56. **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

57. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

58. **No Utility.** Here, Defendant's conduct of labeling the Products with the Plant-Based Representations when the Products contain ingredients other than water, that do not come from plants, and contain ingredients chemically modified from their original plant-based composition has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

59. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

60. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

45

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

unfair business practice within the meaning of California Business and Professions Code Section 17200.

61.    **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based Representations.

62.    **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

63.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Plant-Based Representations.

64.    **Causation/Damages**. Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiffs and the California Subclass paid for Products that contained ingredients that are non-natural, synthetic, and/or highly processed. Plaintiffs and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive.  Accordingly, Plaintiffs seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### "*Fraudulent" Prong*

65.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

66.    **Fraudulent & Material Challenged Representations.** Defendant used the Plant-Based Representations with the intent to sell the Products to consumers, including Plaintiffs and the California Subclass. The Challenged Representations are false and Defendant knew or should have known of its falsity. The Challenged Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable

46

consumer.

67. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

68. **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

69. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based Representations.

70. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

71. **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Plant-Based Representations.

72. **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products. Specifically, Plaintiffs and the California Subclass paid for products that they believed only contained water and ingredients that come from plants, and that were not subjected to chemical modification or processing, which materially altered the ingredients' original plant-based composition. Plaintiffs and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiffs seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

73. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

74.    **Violations of CLRA and FAL.**  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

75.    **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

76.    **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

77.    **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based Representations and/or omitting that the Products contained ingredients other than water and that are not plant based, chemically modified, and/or highly processed.

78.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

79.    **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive labeling and advertising of the Products.

80.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs and the California

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Subclass paid an unwarranted premium for the Products. Plaintiffs and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are truly plant-based wipes. Accordingly, Plaintiffs seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of the False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500,** *et seq.***)**

**(*On Behalf of the California Subclass*)**

81.     **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in the complaint, as though fully set forth herein.

82.     **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

83.     **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

84.     **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Plant-Based Representations disseminated to the public through the Products' labeling, packaging, and advertising. These representations were false because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

85.     **Knowledge.** In making and disseminating the Challenged Representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

86.     **Intent to sell.** Defendant's designed the Challenged Representations specifically to induce reasonable consumers, like Plaintiffs and the California Subclass, to purchase the Products.

87.     **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have

49

**CLASS ACTION COMPLAINT**

suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

88.   **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of the Consumers Legal Remedies Act ("CLRA")

### (California Civil Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

89.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in the complaint, as though fully set forth herein.

90.   **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

91.   **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

92.   **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

93.   **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

94.   **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

95.   **Transactions.** Purchase of the Products by Plaintiffs and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

96.   **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiffs and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

   a.   Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

   b.   Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

   c.   Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

97.   **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

98.   **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Products.

99.   **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California

Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

100. **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

101. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code section 1782, and concurrent to the filing of this complaint, Plaintiffs' counsel, acting on behalf of Plaintiffs and members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant The Honest Company, Inc. at its headquarters and principal place of business registered with the California Secretary of State (The Honest Company, 12130 Millennium Dr., #500, Los Angeles, CA 90094) and its registered agent for service of process (Ct Corp. System, 330 N. Brand Blvd., Suite 700, Glendale, CA 91203). At the appropriate time, Plaintiffs will amend the operative complaint to seek monetary damages pursuant to the CLRA.

102. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

103. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiffs and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiffs have no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiffs and the California Subclass. Accordingly,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   Plaintiffs seek an injunction to enjoin Defendant from continuing to employ the unlawful methods,

2   acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant

3   to take corrective action necessary to dispel the public misperception engendered, fostered, and

4   facilitated through Defendant's deceptive labeling of the Products' with the Challenged

5   Representations.

### COUNT FOUR

### Breach of Warranty

#### (*On Behalf of the Nationwide Class and California Subclass*)

104.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in the complaint, as though fully set forth herein.

105.   **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

106.   **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

107.   **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendant—to wit, that the Products, among other things, conform to the Challenged Representations.

108.   **Breach of Warranty.** Contrary to Defendant's express warranties, the Products do

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Products and their qualities.

109.   **Causation/Remedies.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

110.   **Punitive Damages**. Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct.  Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

111. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in the complaint, as though fully set forth herein.

112. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

113. **Plaintiffs/Class Conferred a Benefit.** By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

114. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

115. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

116. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

117. **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiffs and the Class. Defendant's unfair, fraudulent, and

unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant

## **PRAYER FOR RELIEF**

118.   WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a.      **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

b.      **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.      **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d.      **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

e.      **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f.      **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g.      **Pre/Post Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h.      **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: August 10, 2022

**CLARKSON LAW FIRM, P.C.**

By:   _/s/ Katherine A. Bruce_____
        Ryan J. Clarkson
        Katherine A. Bruce
        Kelsey J. Elling
        Olivia M. Treister

**CROSNER LEGAL, P.C.**

By:   _/s/ Chad Saunders_____
        Michael R. Crosner
        Zachary M. Crosner
        Blake R. Jones
        Chad Saunders

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues and causes of action so triable.

Dated: August 10, 2022

**CLARKSON LAW FIRM, P.C.**

By:  */s/ Katherine A. Bruce*
Ryan J. Clarkson
Katherine A. Bruce
Kelsey J. Elling
Olivia M. Treister

**CROSNER LEGAL, P.C.**

By:  */s/ Chad Saunders*
Michael R. Crosner
Zachary M. Crosner
Blake R. Jones
Chad Saunders

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265